UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the May 28, 2005
Robinson/Chavez Program,

        Plaintiff,    **MEMORANDUM and ORDER**

   -against-

                06-CV-3382 (SLT)(SMG)

CARLOS M. GUERRA, Individually and d/b/a
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA, and
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA,

        Defendants.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**

   This is one of eight separate actions which have been brought pursuant to 47 U.S.C. §§ 553 and 605 against defendant Carlos M. Guerra, individually and doing business as Cevicheria Los Guerra, by franchised cable television operators alleging that Guerra unlawfully intercepted and exhibited the closed circuit telecasts of sports events to patrons at Cevicheria Los Guerra (the "Establishment"). In this case, plaintiff J & J Sports Productions, Inc., alleges that it contracted with a boxing promoter to obtain the exclusive license to exhibit within the United States the telecast of a May 28, 2005, boxing program (the "Program"), but that defendant Guerra exhibited the Program at the Establishment without plaintiff's authorization.

   As in the other seven actions, neither Guerra nor Cevicheria Los Guerra Restaurant filed an answer or otherwise responded to the complaint, and a default was entered against them. In October 2006, plaintiff moved for a default judgment in this case, seeking statutory damages of up to $10,000 pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); enhanced damages of up to $100,000 pursuant to 47 U.S.C. §605(e)(3)(C)(ii); and costs and attorneys' fees. On October 23, 2006, Judge Gershon granted that motion, but referred this matter to Magistrate Judge Matsumoto for a

Report and Recommendation as to the amount of relief to be awarded. After it was subsequently determined that this case was related to several others pending in this Court, this matter was transferred to this Court. This Court hereby vacates the referral order dated October 23, 2006, and, for the reasons set forth below, directs that the Clerk of Court enter judgment in favor of plaintiffs and against defendants, jointly and severally, in the amount of $6,361.50.

*The Consequences of Defendants' Default*

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, by defaulting in this case, defendants have conceded, *inter alia*, that they (1) "willfully violated 47 U.S.C. § 605(a)," Complaint at ¶ 21, and (2) "willfully violated 47 U.S.C. § 553." Complaint at ¶ 35.[1]

---

[1] Plaintiff's pleadings also allege upon information and belief that defendants violated 47 U.S.C. § 605(e)(4) by "modif[ying] a device or utiliz[ing] equipment, knowing or having reason to know that the device or equipment is used primarily in the assistance of the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for [another] . . . activity" prohibited by 47 U.S.C. § 605(a). Complaint at ¶ 26. However, very similar allegations have been held to be insufficient to create liability under § 605(e)(4). *See, e.g., Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB)(KAM), 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 7, 2005). As the *Morales* Court noted, "several district courts have recognized [that] . . . § 605(e)(4) . . . is aimed at upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Id.* (internal citations and quotations omitted). Allegations of the sort contained in plaintiff's pleadings do not support a finding that defendants were "more than 'ultimate consumers' or 'end users' of an illegally modified device, as opposed to 'upstream manufacturers and distributors' of such a device" and, therefore, provide an insufficient factual basis for finding liability under § 605(e)(4). *Id.* Accordingly, to the extent that plaintiff's motion can be read as requesting damages for a violation of § 605(e)(4), this Court declines to award such damages.

2

Although defendants have admitted liability under both § 605 and § 553, plaintiff "can recover under only one statute." *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 CV 1042 (GBD) (RLE), 2006 WL 728408, at *1 (S.D.N.Y. Mar. 20, 2006) (Report and Recommendation of Ellis, M.J.) (citing *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996)). In this case, plaintiff has elected to recover under § 605(a). Plaintiff's Memorandum of Law ("Plaintiff's Memo") at 7. Accordingly, this Court will proceed to determine the damages recoverable under that statute.

*Damages Under § 605*

Section 605(e) provides, *inter alia*, that any person aggrieved by a violation of § 605(a) can bring a civil action in district court, in which the court:

> (i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of . . . [§ 605(a)];
>
> (ii) may award damages as described in subparagraph (C); and
>
> (iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). Subparagraph (C) permits the recovery of either actual damages under (C)(i)(I), or statutory damages under (C)(i)(II). Plaintiff requests that this Court award statutory damages. *See* Plaintiff's Memo at 7.

The statutory damages provision, § 605(e)(3)(C)(i)(II), provides, in pertinent part:

> [T]he party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

In addition, § 605(e)(3)(C)(ii) states:

> In any case in which the court finds that the violation was

> committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)] . . . .

Although § 605 provides little guidance as to how to set damages within the statutory range, "courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events." *Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064 (FB)(KAM), 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005) (Report and Recommendation of Matsumoto, M.J.) (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)). First, in cases where the exact number of patrons is unknown, courts have awarded flat sums based on what the court "considers just." *See*, *e.g.*, *Entertainment by J & J, Inc. v. Suriel*, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000 in statutory damages); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages). Second, "[i]n cases where there is uncontradicted evidence of the number of patrons viewing the match in the establishment, courts have . . . multiplied the number of patrons by a set sum," and have awarded that amount "plus any cover charges or other profits attributable to the unauthorized viewing." *Morales*, 2005 WL 2476264, at *6. Although the "set sum" varies widely, with some courts awarding as little as $20, *see Time Warner Cable v. Sanchez*, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003), and some courts awarding as much as $300, *see Garden City Boxing Club, Inc. v. Salcedo*, No. 04 Civ. 5027 (DFE), 2005 WL 2898233, at *2 (S.D.N.Y. Nov. 3, 2005), many courts have found $50 to be the appropriate amount. *See*, *e.g.*, *Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Services, Inc.*, No. CV-01-3945 (RR), 2002 WL

2022522, at *3 (E.D.N.Y. May 21, 2002); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997); *Cablevision Sys. Corp. v. 45 Midland Enter., Inc.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994).

Although Plaintiff's Memo principally relies on *Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300 (ARR)(JMA), 2005 WL 2496062 (E.D.N.Y. Sept. 20, 2005) – a case in which statutory damages were calculated by multiplying the capacity of the establishment by the "residential price," the price an individual would pay to view the event at home – plaintiff "urges that the award of statutory damages be no less than the maximum allowed by statute, $10,000." Plaintiff's Memo at 7. Plaintiff argues that this amount is justified because "[d]efendants have stolen more than one pay-per-view boxing event and should be fined accordingly." *Id.*

This Court rejects this argument for two reasons. First, statutory damages are not intended to "fine" defendants, but to compensate plaintiffs for the money lost due to the defendants' infringing activities. To be sure, § 605(e) aims to deter defendants from further infringement. However, it provides another mechanism – the enhanced damages discussed below – for accomplishing that end.

Second, plaintiff inexplicably neglects to mention that defendants have been sued in seven other actions, even though three of these action are (or were) prosecuted by plaintiff's counsel herself. In each of these actions, statutory damages were or will be awarded. Therefore, awarding the maximum statutory damages simply because defendants have engaged in other infringing activities would result in vast overestimation of damages.

This Court also declines to adopt the approach used in *Bello*. This Court agrees with *Bello* insofar as it uses the "residential price" in calculating damages, but does not agree with the *Bello* Court's decision to multiply that price by the maximum capacity of the establishment. The

*Bello* approach, which is based on the recognition that "it is entirely possible" the establishment filled to capacity after plaintiff's auditor left, *see Bello*, 2005 WL 2496062, at *3, is somewhat speculative. As another court has noted, "although it is entirely possible that more patrons were there before or after the auditor's visit, it is also entirely possible that there were not." *Garden City Boxing Club, Inc. v. Perez*, No. 05 CV 3713 (FB)(CLP), 2006 WL 2265039, at *6 (E.D.N.Y. Aug. 8, 2006) (Report and Recommendation of Pollak, M.J.). Accordingly, this Court – like several other courts in this district – rejects the *Bello* approach, and will base its estimate on the number of patrons the auditor actually observed in the Establishment. *See, e.g., J & J Sports Productions, Inc. v. Drake*, No. 06 CV 246 (ILG)(RML), 2006 WL 2927163, at *4 (E.D.N.Y. Oct. 11, 2006) ("I find [the Bello] analysis somewhat speculative and prefer to rely on plaintiff's evidence concerning the actual number of patrons who viewed the Event."); *Kingvision Pay-Per-View Ltd. v. Cazares*, No. CV-05-2934 (DGT), 2006 WL 2086031, at *3, n. 5 (E.D.N.Y. July 25, 2006) (Report and Recommendation of Levy, M.J.) ("I also find [the Bello] analysis somewhat speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who viewed the Event.").

In this case, plaintiff has provided a "Piracy Affidavit," attached as Exhibit C to "Plaintiff's Affidavit for Default," in which an auditor, Sean McGrory, states that he visited the Establishment around 9:55 p.m. on May 28, 2005, and observed 15 patrons watching the Program. In addition, plaintiff has introduced evidence that the residential price for viewing the Program was $54.95. Plaintiff's Affidavit for Default at ¶ 10.B. However, if this Court simply multiplies the number of patrons, 15, by the "residential price" of $54.95, the award would be only $824.25. Since this is less than the statutory minimum of $1,000, this Court awards

6

plaintiff statutory damages in the amount of $1,000.

Plaintiff is also entitled to enhanced damages. It is beyond question that the § 605(a) violation "was committed willfully and for purposes of direct or indirect commercial advantage." § 605(e)(3)(C)(ii). After all, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Googies Luncheonette*, 77 F. Supp. 2d at 490. However, in awarding enhanced damages, courts have borne in mind that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006).

In order to determine the amount of enhanced damages to award in this case, this Court will take into consideration Guerra's history of infringement and the amount of enhanced damages previously awarded. Guerra was first sued under §§ 553 and 605 in October 2003, in connection with the unlawful interception and exhibition of the closed-circuit broadcast of a soccer match. In a Report and Recommendation dated February 3, 2005, Magistrate Judge Matsumoto found that there was insufficient evidence that Guerra had acted for purposes of direct or indirect commercial advantage and, therefore, recommended that Judge Gershon not award enhanced damages. *See Innovative Sports Marketing, Inc. v. Guerra*, No. 03-CV-5394 (NG)(KAM), slip op. at 8 (E.D.N.Y. Feb, 3, 2005). On February 17, 2005, Judge Gershon adopted Magistrate Judge Matsumoto's Report and Recommendation.

On March 9, 2005, Guerra was sued under §§ 553 and 605 for a second time. The complaint in this second action – *Garden City Boxing Club, Inc. v. Guerra*, No. 05-CV-1298 (DLI)(MDG) – alleged the interception and exhibition of the closed-circuit broadcast of a

7

September 18, 2004, boxing match which occurred almost 11 months after defendants had been sued by Innovative Sports Marketing, but before Magistrate Judge Matsumoto had issued her Report and Recommendation in that case. On March 6, 2006, Magistrate Judge Go recommended that the Court award enhanced damages in the amount of three times the statutory damages. *Garden City Boxing Club, Inc. v. Guerra*, No. 05-CV-1298 (DLI)(MDG), slip op. at 11 (E.D.N.Y. Mar. 6, 2006). Judge Irizarry adopted that recommendation and awarded enhanced damages of $6,000.

On January 11, Guerra was sued under §§ 553 and 605 yet again, this time in connection with an infringement alleged to have occurred on July 16, 2005 – more than four months *after* the judgment was entered in *Innovative Sports Marketing*. On July 6, 2006, Magistrate Judge Levy recommended that enhanced damages be awarded in the amount of four times the statutory damages. *J & J Sports Productions, Inc. v. Guerra*, No. 06-CV-164 (CPS)(RML), slip op. at 8-9 (E.D.N.Y. July 6, 2006). Judge Sifton adopted that recommendation and awarded damages of $4,000.

In light of these prior cases, this Court determined in *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 05-CV-4087 (SLT) (decided herewith), that it was appropriate to award enhanced damages in the amount of three times the statutory damages in cases in which Guerra committed the infringement before the judgment was entered in *Innovative Sports Marketing*, and four times the statutory damages in cases in which the infringement occurred after that March 1, 2005, judgment. In this case, the infringement took place on May 28, 2005 – almost three months after judgment was entered in *Innovative Sports Marketing*. Accordingly, this Court will award four times the statutory damages in this case. Since the statutory damages are $1,000, this Court will

award $4,000 in enhanced damages.

The total amount of enhanced damages in this case and the four other cases decided herewith – *Garden City Boxing Club, Inc. v. Guerra*, No. 05-CV-3712 (SLT)(SMG), *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 05-CV-4087 (SLT)(SMG), *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 06-CV-441(SLT)(VVP), and *Kingvision Pay-Per-View, Ltd. v. Guerra*, No. 06-CV-5472 (SLT)(SMG) – is $22,844. This Court recognizes that Cevicheria Los Guerra is a small business, and has repeatedly opined that enhanced damages of $10,000 should be adequate to deter similar small businesses from further infringement. *See Kingvision Pay-Per-View, Ltd. v. Caffe Del Popolo*, No. 05-CV-5631 (SLT)(JO), 2007 WL 433322, at *3 (E.D.N.Y. Feb. 6, 2007); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 64 (E.D.N.Y. 2006). However, the $10,000 in enhanced damages awarded against Guerra to date has proven not to be an adequate deterrent. Accordingly, this Court has little choice but to substantially increase the damages in the hope that such hefty damages will dissuade Guerra from continuing to intercept and unlawfully exhibit closed-circuit television programming.

*Attorneys' Fees and Costs*

Section 605(e)(3)(B)(iii) expressly provides that a court "shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails." Relying on this language, courts in this Circuit have repeatedly held that "under Section 605 the award of costs and attorneys' fees is mandatory." *Polanco*, 2006 WL 305458, at *4; *see also Morales*, 2005 WL 2476264, at *9. However, a party seeking attorneys' fees must nonetheless "support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done." *Morales*, 2005 WL 2476264, at *9 (internal

9

quotations and citations omitted).

In this case, plaintiff's counsel has provided the required documentation. This Court has fully reviewed the time records and finds that the 3.12 hours spent on this case by the attorney, and the 2.5 hours spent by a paralegal, to be entirely reasonable. In addition, although plaintiff's counsel has not attached a copy of her *curriculum vitae*, this Court is aware, based on its own research in this case, and other, similar cases, that plaintiff's counsel is very experienced in handling cases of this sort. Her fee of $200 per hour, and the $75 per hour fee she charges for her paralegal's time, are both well within the range awarded in this district. *See*, *e.g.*, *Commission Express Nat'l, Inc. v. Rikhy*, No. CV-03-4050 (CPS), 2006 WL 385323, at *6 (E.D.N.Y. Feb. 17, 2006) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $300 for partners; $100 to $150 for junior associates and $200 to $250 for senior associates" and from $60 to $75 for paralegals). Accordingly, plaintiff is awarded attorneys' fees totaling $811.50.

With respect to costs, plaintiff is entitled to recover both the $350 filing fee and the $200 it cost to serve the summons and complaint on defendants. Accordingly, plaintiff is hereby awarded costs of $550.00.

## CONCLUSION

For the reasons stated above, defendants Carlos M. Guerra and Cevicheria Los Guerra Restaurant a/k/a Cevicheria Los Guerra shall be jointly and severally liable to plaintiff for $1,000 in statutory damages pursuant to § 605(e)(3)(C)(i)(II); $4,000 in enhanced damages pursuant to

§ 605(e)(3)(C)(ii); $811.50 in attorneys' fees and $550 in costs. Accordingly, the Clerk of Court

is directed to enter judgment in favor of plaintiff and against these defendants, jointly and severally, in the total amount of $6,361.50.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
February 16, 2007